United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABIJITH KARIGUDDAIAH, | No. C 09-5716 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| WELLS FARGO BANK, N.A.; WELLS FARGO HOME MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, WESTERN SECURITY MORTGAGE, AND DOES 1-100, | **Re: Defendant Wells Fargo Bank's Motion to Dismiss** |
| Defendants. | |

    Plaintiff Abijith Kariguddaiah ("Kariguddaiah") initially brought this action in the Superior Court of California in the County of Contra Costa. Defendants removed the action to this court, and Kariguddaiah filed a First Amended Complaint[1] on April 12, 2010. This complaint alleges constructive fraud, wrongful foreclosure and unfair business practices related to the mortgage and foreclosure of Kariguddaiah's home. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The court finds this motion suitable for decision without oral argument. Civil L.R. 7-1(b). Having considered the parties' submissions, the court enters the following memorandum and order.

BACKGROUND

    As appropriate on a motion to dismiss, all well-pleaded allegations in Kariguddaiah's complaint are assumed to be true.

1       On October 19, 2006, Kariguddaiah took out a mortgage loan for $596,000.00 from Wells
2 Fargo. Docket No. 16 (Compl.) ¶ 10. He secured this loan with a Deed of Trust on property located
3 at 3662 Silver Oak Place, in Danville, California. *Id.* ¶ 12; *id.*, Exh. C (Deed of Trust). Although
4 Kariguddaiah subsequently defaulted on this loan, he alleges that Wells Fargo refused to work with
5 him in any reasonable way to avoid foreclosure, or to comply with applicable default loan servicing
6 obligations promulgated by Fannie Mae and Freddie Mac. *Id.* ¶¶ 32, 34–49.

7       Kariguddaiah sent two qualified written requests to Wells Fargo in July and August of 2009,
8 inquiring about the ownership of his loan and the application of his payments on the loan to his
9 debt.[2] *Id.* ¶¶ 73–74. Wells Fargo failed to respond; however, it continued to report negatively on
10 Kariguddaiah's credit. *Id.* ¶ 76. According to Kariguddaiah, this negative reporting caused him
11 monetary loss in the form of "higher payments and interest." *Id.* ¶¶ 77, 82. Kariguddaiah also
12 alleges that Wells Fargo's standard operating procedure is to summarily deny all loan- and
13 foreclosure-related grievances. *Id.* ¶ 81.

14       A Notice of Default was recorded on August 24, 2009 by First American Loanstar Trustee
15 Services. *Id.*, Exh. D (Notice of Default). Kariguddiah brought this action on September 23, 2009.

17 LEGAL STANDARD

18       Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a
19 defendant for failure to state a claim upon which relief can be granted against that defendant. A
20 motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*,
21 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory
22 or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*
23 *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A motion to dismiss should be granted if a plaintiff
24 fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*
25 *Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard is not akin to a 'probability
26 requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
27 *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at

2

556). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 129 S. Ct. at 1950.

"[A]llegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). "[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1363 (3d ed. 2004).

DISCUSSION

As a threshold matter, Wells Fargo argues that Kariguddaiah has no standing to challenge the foreclosure proceedings because he has not offered to tender what he owes on the loan. A debtor in default cannot challenge a foreclosure unless he first makes a credible offer to pay the amount owed. *Alicea v. GE Money Bank*, No. C 09-0091 SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) (Armstrong, J.); *Montoya v. Countrywide Bank, F.S.B.*, No. C 09-0641 JW, 2009 WL 1813973, at *11 (N.D. Cal. June 25, 2009) (Ware, J.); *see also Karlsen v. American Sav. & Loan Ass'n*, 15 Cal.

3

App. 3d 112, 117 (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."). *But cf. Storm v. America's Servicing Co.*, No. 09cv1206-IEG (JMA), 2009 WL 3756629, at *6 & n.9 (S.D. Cal. Nov. 6, 2009) (finding tender is not necessarily required at the pleading stage in a case of mutual mistake). For the offer of tender to be effective, the tender must be unconditional, and the debtor making the offer must be able to perform it. *Karlsen*, 15 Cal. App. 3d at 118–20. The requirement may be waived "where it would be inequitable to exact such offer of the party complaining of the sale." *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911).

Kariguddaiah has not alleged in his complaint that he is willing and able to pay the amount he owes on the loan. Likewise, he has not given any reason why it would be inequitable to require tender from him. His vague allegations of inequity on the grounds that Wells Fargo lacks standing to claim title are contradicted by the Deed of Trust attached to his complaint, and by the signed and recorded version of the same document. *See* Compl., Exh. C; Docket No. 19 (Request for Judicial Notice), Exh. A. Furthermore, Kariguddaiah's allegations of defects in the chain of title apply only to subsequent transfers of the promissory note, and not to Wells Fargo's standing as beneficiary of the Deed of Trust. *See* Compl. ¶ 79. Kariguddaiah's argument that he does not know to whom tender must be made is not credible, since the Notice of Default attached to his complaint instructs him to contact Wells Fargo at a given address and phone number to arrange for payment to stop the foreclosure. *See* Notice of Default at 3. Since Kariguddaiah has made no offer of tender, and alleged no facts showing that requiring tender would be inequitable, he cannot challenge the foreclosure.[3]

Kariguddaiah states in his opposition that he "can and will tender pursuant to all applicable laws and will make such an allegation upon leave to amend." Docket No. 24 (Opposition) at 10. This conclusory language is insufficient. The rules which govern tenders "are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003). The tender must be unconditional and must be for the full amount owed. *Karlsen*, 15 Cal. App. 3d at 118–20. To survive a motion to dismiss, Kariguddaiah should have alleged facts indicating that he is in fact able to tender the

4

amount he owes—an inference not plausible from the present complaint. *See* Compl. ¶¶ 19, 21–22, 32 (detailing Kariguddaiah's inability to pay the monthly mortgage amount, let alone tender the amount due).

Leave to amend is not automatic whenever a plaintiff loses a Rule 12 motion. To justify the request to amend, plaintiff must explain what he can add to the complaint to overcome the fatal obstacles that exist. Otherwise, granting leave to amend amounts to a pure delay in the final disposition of the case. *In re Daou Systems*, 411 F.3d 1006, 1013 (9th Cir. 2005) (complaint may be dismissed with prejudice if it is clear that it cannot be saved by amendment); *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) ("Dismissing a complaint without leave to amend is appropriate when granting leave would serve no purpose because the acts complained of cannot constitute a claim for relief."); *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (dismissal with prejudice is proper if amendment "would be futile in saving the plaintiff's case"). The court notes that this is not plaintiff's first complaint, which was filed in state court on September 23, 2009 and consisted of forty pages plus attachments. In this, his first amended complaint, and in his opposition, plaintiff has not identified any facts he could plead in a further amended complaint to overcome the noted fatal defects.

In sum, Kariguddaiah's failure to tender what he owes requires dismissal of his foreclosure-related claims. In an abundance of caution, the court will nevertheless consider Kariguddaiah's claims as if tender had been properly alleged.

I.   Constructive fraud

Kariguddaiah concedes that the first claim alleged in his complaint, for constructive fraud, is not directed against Wells Fargo. Opposition at 3. Therefore, the first claim is dismissed with respect to Wells Fargo. Although unclear, it appears that this claim is directed toward defendant Western Security Mortgage. This action has been pending for nine months, and there is no indication that Western Security Mortgage has been served or has appeared in this action. Since this action was originally filed on September 23, 2009, and no extensions have been sought by

Kariguddaiah for service on this defendant, *see* Fed. R. Civ. P. 4(m), Western Security Mortgage is dismissed, along with this cause of action.

II.     Wrongful foreclosure

Kariguddaiah's second claim for relief alleges wrongful foreclosure, presenting several embedded claims regarding why the foreclosure on his property was wrongful.

A.     Loan servicing guidelines

Kariguddaiah's first embedded claim for wrongful foreclosure alleges that Wells Fargo failed to provide special default loan servicing as required by guidelines promulgated by Fannie Mae and Freddie Mac. However, the complaint never alleges why Wells Fargo is obligated to follow these guidelines. Merely stating that guidelines exist, and that Wells Fargo did not follow those guidelines, is not sufficient to "show that [Kariguddaiah] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the complaint fails to state a claim on this theory.[4]

In his opposition, Kariguddaiah notes that the phrases "Freddie Mac Uniform Instrument" and "California - Single Family - Fannie Mae/Freddie Mac Uniform Instrument" appear in footers at the bottom of the first page of the promissory note and Deed of Trust, respectively. *See* Compl., Exh. B (Promissory note); Deed of Trust. He contends, again in his opposition, that these footers together incorporate the entire body of the Fannie Mae and Freddie Mac default loan servicing guidelines into the mortgage contract. Even if this claim had been pled in the complaint, it fails to meet the plausibility standard required for proper pleading. There is simply no indication that incorporation by reference was contemplated, and the contract states nothing to this effect. *See* Cal. Civ. Code § 1639 ("the intention of the parties to a contract is to be determined from the writing alone, if possible"). Moreover, Kariguddaiah's contention, that the footer on this standard form incorporates all of Freddie Mac's loan servicing guidelines, is too far-fetched to meet even the minimal requirements of Federal Rule of Civil Procedure 8(a).[5] It is somewhat like claiming that a watermark on a paper contract incorporates the paper manufacturer's business practices into the agreement. Drawing on its judicial experience and common sense, *see Iqbal*, 129 S. Ct. at 1950, the

1 court concludes that these allegations do not sustain a claim for wrongful foreclosure. This
2 embedded claim is dismissed.

### B. Deed of trust

Kariguddaiah's second embedded claim for wrongful foreclosure alleges that he was not provided with a Notice of Default meeting the requirements of section 22 of the mortgage deed. Compl. ¶ 50. However, Kariguddaiah attaches the Notice of Default he received to his complaint. *See* Notice of Default. Kariguddaiah provides no indication as to how this Notice is insufficient in either his complaint or his opposition. Indeed, he simply ignores Wells Fargo's arguments. Since Kariguddaiah's allegations are contradicted by the documents incorporated into the pleadings, the court need not accept them as true. Therefore, this embedded claim is dismissed.

### C. National Housing Act

Kariguddaiah's third embedded claim for wrongful foreclosure is that Wells Fargo failed to comply with the loan servicing requirements in the National Housing Act, codified at 12 U.S.C. section 1701x(c)(5), before foreclosing. Compl. ¶¶ 51–52. Wells Fargo argues that even if it failed to comply with the loan servicing requirements of the National Housing Act, and even if those requirements are applicable (which Kariguddiah's allegations do not show), the National Housing Act does not create a private right of action. *See Holbrook v. Aurora Loan Servs.*, No. 2:09-cv-05682-CAS-AGRx, 2010 WL 986794, at *5 (C.D. Cal. Mar. 15, 2010) (citing cases). Kariguddaiah presents no argument or legal authority in his opposition for a private right of action under the National Housing Act. He simply ignores Wells Fargo's arguments. Consequently, Kariguddaiah's third embedded claim for wrongful disclosure is dismissed.

### D. Derangement of title

In paragraphs 54 to 63 of his complaint, Kariguddaiah alleges that neither MERS nor U.S. Bank has any valid interest in his property. MERS appears nowhere else in Kariguddaiah's complaint, nor does it appear to be an interested party in this mortgage transaction. The only factual allegation connecting U.S. Bank to Kariguddaiah's mortgage is in paragraph 13 of the complaint:

7

"Defendant U.S. Bank N.A. as Trustee for CMLIT 2007-AR8 ("Loan Pool") is at least one of the believed several successor parties to Defendant Wells Fargo Bank, N.A." Plaintiff claims that "U.S. Bank is acting ultra vires in so attempting to foreclose on Plaintiff because the Subject Loan was disqualified from being accepted as an asset into the Loan Pool when the transfer was attempted." Compl. ¶ 13. By its very terms, the complaint alleges that U.S. Bank does not have the power to foreclose because the purported transfer was improper; consequently, the predecessor party, Wells Fargo, would remain the proper beneficiary of the security agreement. *See* Deed of Trust at 1–2 (stating that Wells Fargo is the beneficiary of the security agreement).

Kariguddaiah also alleges in paragraph 13 of his complaint that: "Upon information and belief, [Kariguddaiah's promissory Note] was sold without recordation of such transfer some time after the effective date of the Note, and the originally named beneficiary is no longer the true beneficiary of the note. Defendants are not holders in due course of the Note, due to fraud in factum and ineffective endorsement." These vague allegations—which don't even specify which defendant is liable for what—amount to little more than conclusions of law, and are insufficient to show derangement of title. *See Iqbal*, 129 S. Ct. at 1950 (well-pleaded facts must show more than the "mere possibility of misconduct."). This embedded claim against Wells Fargo is dismissed.

E.  Section 2923.5

Kariguddaiah's fifth embedded claim alleges that the foreclosure was wrongful because Wells Fargo did not contact him in accordance with California Civil Code section 2923.5 before foreclosing. He also disputes the sufficiency of Wells Fargo's declaration "in that [Kariguddaiah] was not contacted according to the code." Compl. ¶ 67.

There exists a private right of action under section 2923.5, and it is not preempted by federal law as long as the relief is limited to postponement of foreclosure. *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 226 (2010). Indeed, according to the California Court of Appeal, "under the plain language of section 2923.5, read in conjunction with section 2924g, the *only* remedy provided is a postponement of the sale before it happens." *Id.* at 235 (emphasis in original). Consequently, this cause of action applies only against the entity effectuating the foreclosure sale. Since that entity

8

here is First American Loanstar Trustee Services, this claim is dismissed against Wells Fargo. *See* Cal. Civ. Code § 2923.5(a) (allowing trustee to file notice of default, but not to contact borrower). Moreover, this section cannot be used to justify the imposition of a *lis pendens* on the property. *Mabry*, 185 Cal. App. 4th at 235 ("There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale."). The court also notes that although this action has been pending for nine months, Kariguddaiah has not sought a temporary restraining order or a preliminary injunction seeking postponement of the sale, the only available remedy under this cause of action.

III.     Unfair business practices

Kariguddaiah's third cause of action is for unfair business practices, and contains three embedded claims. The first, for failure to make necessary disclosures, is directed solely against the broker. This claim is dismissed due to Kariguddaiah's failure to serve the broker. The remaining two claims allege that Wells Fargo failed to respond to a qualified written request, and engaged in wrongful foreclosure as an unfair business practice.

A.     Qualified written request

Kariguddaiah alleges that he sent two qualified written requests ("QWRs") to Wells Fargo, and that Wells Fargo failed to respond to them. Under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, a loan servicer is required to respond to any valid qualified written request. *Id.* § 2605(e). Failure to do so is actionable. *Id.* § 2605(f).

Wells Fargo argues that Kariguddaiah's letters were not "qualified written requests" because they did not inquire after the servicing of his loan. However, Kariguddaiah has alleged that the qualified written requests sought information "as to the application of [Kariguddaiah's] payments on the loan being applied properly to [Kariguddaiah's] debt." Compl. ¶ 73. This falls squarely within the definition of "servicing" under RESPA. 12 U.S.C. § 2605(i)(3) (defining "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan").

9

Wells Fargo further argues that Kariguddaiah's QWRs do not meet the requirements laid out in RESPA because they do not identify any alleged servicing errors. However, the QWRs themselves are not attached to the complaint, nor has judicial notice been sought. Without the QWRs themselves, the court must take all facts alleged by Kariguddaiah as true and cannot conclude that the QWRs were defective.

Finally, Wells Fargo argues that Kariguddaiah has not sufficiently alleged pecuniary harm based on Wells Fargo's failure to respond to the QWRs. Paragraph 77 of Kariguddaiah's complaint states: "Plaintiff suffered actual damages in higher payments and interest for wrongful continued credit reporting while the QWR was pending unresolved." Without further factual allegations showing that Kariguddaiah had other loans pending on which he paid higher interest, the assertion that Kariguddaiah's negative credit rating caused him "higher payments and interest" is not sufficient to nudge his claims across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 569. Although Kariguddaiah was on notice of this deficiency, he presented no facts in his opposition to substantiate his legal conclusion regarding actual damages. Consequently, this claim fails.

B.    Section 17200

Kariguddaiah's third claim alleges that Wells Fargo engaged in unfair competition, in violation of California Business & Professions Code section 17200, by abusing the non-judicial foreclosure process. Wells Fargo argues firstly, that Kariguddaiah has not stated any antecedent violation of law that could support an action for unfair competition, and secondly, that Kariguddaiah cannot bring a claim under section 17200 because he has not suffered any injury capable of restitution. The second argument is dispositive.

In order to bring a section 17200 claim, a plaintiff must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. This statutory limitation requires that a plaintiff show he has suffered losses capable of restitution. *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 817 (2007). Restitution is only possible

10

if the section 17200 action can "restore to any person any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

Here, Kariguddaiah alleges that he "has suffered actual damages as a result of the Defendants' unfair business practices, including but not limited to the breach of contract and unlawful 'foreclosure' activities alleged above, damage to his credit which cost increased interest payments with other vedors [sic], and emotional distress." Compl. ¶ 82. Damage to Kariguddaiah's credit, increased interest payments to other vendors, and emotional distress are not damages capable of restitution. Therefore, the only damages specified by Kariguddiah which would be capable of restitution are his purported damages for "breach of contract and unlawful 'foreclosure' activities." However, as explained above, Kariguddaiah has failed to state a claim for either breach of contract or wrongful foreclosure. Since he has not plausibly alleged any breach of contract or wrongful foreclosure by Wells Fargo, he cannot seek damages for those causes of action. Thus, Kariguddaiah has failed to assert any damages which would give him the ability to pursue a Section 17200 claim.[6]

CONCLUSION

For the foregoing reasons, plaintiff's claims against Wells Fargo Bank, N.A. are dismissed with prejudice, and his claims against Western Security Mortgage are dismissed.

IT IS SO ORDERED.

Dated: July 1, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

## **ENDNOTES**

1.     For ease of use, the court will refer to the First Amended Complaint as the "complaint" in text and "Compl." in citations.

2.     Grammatical errors in the complaint make it difficult to determine how many qualified written requests were sent. *Compare* Compl. ¶ 73 ("On or about 7/16/2009 and 08/03/2009, Plaintiff sent qualified written request [sic] . . .") *with id.* ¶ 77 ("the QWR was pending unresolved."); *see also* Docket No. 24 (Opposition) at 10 (" . . . Wells Fargo was in receipt of . . . his qualified written request letter . . . ." (indicating that only one letter was sent)). Reading the complaint liberally, the court will assume Kariguddaiah alleges that two requests were sent.

3.     Kariguddaiah's reliance on *Cosio v. Simental*, CV 08-6853 PSG (PLAx), 2009 WL 201827 (C.D. Cal. Jan. 27, 2009), is misplaced. There, the plaintiffs properly alleged their willingness to tender; it was only their ability to tender that the defendant challenged. *Id.* at *3. The court found that the defendant's argument was premature, because the factual record was insufficient to conclude that plaintiffs would be unable to tender at the time of rescission. *Id.* Here, Kariguddaiah's complaint does not allege that he is willing to tender, nor does Kariguddaiah present any facts giving rise to a plausible inference that he will be able to.

4.     Contrary to the contentions in Kariguddaiah's opposition, the complaint does not assert that the subject loan is secured or underwritten by Fannie Mae or Freddie Mac. Even if such an allegation had been made, it would be insufficient unless it stated sufficient facts to make his claims plausible rather than merely conceivable. *Twombly*, 550 U.S. at 570. Moreover, Kariguddaiah has not alleged that he was an intended beneficiary of any putative contract between Fannie Mae and Freddie Mac. If he was neither a party to the contract nor an intended beneficiary, he cannot enforce it. *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002). Even had Kariguddaiah alleged that he was the intended beneficiary of such a putative contract, he would be mistaken as a matter of law. *See, e.g.*, *Wells Fargo Bank, N.A. v. Sinnott*, 2:07 CV 169, 2009 WL 3157380, at *11 (D. Vt. Sept. 25, 2009) ("The argument that a mortgagor has third-party beneficiary status under the [Freddie Mac] Servicer Guide has been uniformly rejected by the federal courts.").

5.     Kariguddaiah does not claim that he was misled into believing that the contract incorporated the Fannie Mae/Freddie Mac loan servicing guidelines.

6.     Kariguddaiah notes in his opposition that he has alleged unfair business practices based on an alleged policy by Wells Fargo of summarily denying all claims of erroneous foreclosure, and that he could add allegations that Wells Fargo lacks adequate safeguards against erroneous foreclosures. However, even assuming that Wells Fargo pursued an a unfair policy of summary denial, Kariguddaiah has not alleged any facts showing that this policy harmed *him*, i.e., that Wells Fargo denied his claims unfairly or caused him damages by doing so.